## Court of General Sessions—County of New York.

*May*, 1883.

## PEOPLE *v.* FULLE.

ADULTERATION OF FOOD OR DRUGS.—LAWS OF 1881, CH. 407.—
INTENT.—MISTAKE OF FACT.

Where an adulterated article which can be used as food or as a drug or for other purposes, is sold, there must be, to warrant the conviction of the seller under the "Act to prevent the adulteration of food or drugs" (*L.* 1881, ch. 407), proof that the article was sold as food or as a drug, according to the allegations of the complaint, and also that the article was sold with a criminal intent or under circumstances which show criminal negligence.

The defendant, a grocer, purchased cream of tartar, which was adulterated, in the open market from a dealer. He inquired for and was told by the dealer that the article so purchased by him was the best. He paid the highest price for it, and believed that he was purchasing a pure article and the best, and, so believing, thereafter sold it in the course of his business, as an article of food. *Held*, that under these circumstances the sale was made by the defendant under an honest mistake of fact which excused him.

A charge of selling cream of tartar as a drug cannot be supported by proof of a sale as an article of food.

Appeal from a judgment of conviction of the Court of Special Sessions of the City of New York, of January 9, 1882, under sections 749–772 of the Code of Criminal Procedure, and for a decision under section 764 of that Code.

The defendant's attorney petitioned for the allowance of the appeal on the ground that it was an important case, and one in which the law should be settled by the higher courts.

The appeal was allowed by Justice BARRETT of the Supreme Court. The facts appear in the opinion.

*Henry G. Atwater,* for defendant and appellant.—In this case the adulterated article was sold under a mistake of fact, which was in law a sufficient excuse. 1 *Bish. Cr. Law,* 7th ed. §§ 301–304; People *v.* Gardner, 62 *N. Y.* 304; People *v.* Powell, 63 *N. Y.* 88; Myers *v.* State, 1 *Conn.* 502; Reg. *v.* Cohen, 8 *Cox Crim. Cas.* 41; Reg. *v.* Allday, 8 *Carr. & P.* 136; Jakes *v.* State, 42 *Ind.* 473; Goetz *v.* State, 41 *Ind.* 162; Stern *v.* State, 53 *Ga.* 229; 21 *Amer. Rep.* 266; Williams *v.* State, 48 *Ind.* 306.

*Wm. P. Prentice,* for the State Board of Health.—The question of intent was not in this case. The offense of the defendant was the doing of an act prohibited by the statute. It was *malum prohibitum,* and the statute declares it a misdemeanor irrespective of the motive or intent. Gardner *v.* People, 62 *N. Y.* 304, and cases there cited.

RUFUS B. COWING, City Judge.—This case comes to the General Sessions on an appeal from a judgment of the Special Sessions. The complaint upon which the defendant was tried and convicted in the court below charged him with selling adulterated cream of tartar for a drug and food for the use of man, in violation of chapter 407 of the Laws of 1881, entitled: "An act to prevent the adulteration of food or drugs."

Upon the trial the prosecution was compelled to and did elect to try the defendant on so much of the charge in the complaint as accused the defendant of selling the article in question as a drug, and upon this charge the defendant was tried and convicted, and sentenced to pay a fine of ten dollars.

The defendant's counsel claims that the conviction and judgment entered thereon is erroneous and illegal, and upon his argument before this court relies upon four different grounds for a reversal of the judgment.

1. That a printed volume called the United States Pharmacopœia was improperly received in evidence.

2. That there is no evidence in the case of any sale of cream of tartar as a drug.

3. That there is no evidence in the case of any criminal intent, or of such criminal negligence as in law supplies the place of the criminal intent.

4. That the law under which the defendant was convicted is unconstitutional and void.

One of the objects of the complaint like as indictment, is to inform the defendant of the accusation made against him, that he may know what he is called upon to defend himself against, and be prepared on his trial to meet, and there can be no question that where the evidence fails to establish the charge in the complaint, the defendant should be acquitted, and it is also true that any material variance between the material allegations in the complaint and the proof is fatal to a conviction; nor can a defendant be charged and tried for one offense and be convicted of another and entirely different offense. I consider all these propositions elementary, and as so many legal axioms. Did the defendant, as alleged, willfully or negligently sell adulterated cream of tartar as a drug? If he did, he has violated the law. As appears from the record, in my judgment, the plain, uncontradicted evidence establishes the following facts:

1. That neither the article in question, nor any part of it, was composed of cream of tartar, but was sold under that name.

2. That the defendant at the time of the sale was not a druggist, but was a grocer, and carried on a business pertaining to a grocer.

3. That the defendant did not sell drugs or medicines as such in his grocery business.

4. That the defendant did not manufacture this article in question, but purchased it from one James E. Armstrong as a pure article, as and for the best in the market, and for which he paid the highest market price.

5. That defendant tried to obtain the best of cream of tartar, and believed that he had done so.

6. That the defendant sold the cream of tartar in question in the regular course of his business as and for an article of food.

If I am correct in supposing that all the foregoing facts are clearly established by the plain, uncontradicted evidence in the case, then it follows, in my judgment, that the conviction of the defendant was clearly wrong, for the following reasons:

There was a fatal variance between the complaint and the proof, the complaint alleging that the defendant sold the article in question as a drug, while the evidence clearly established that he sold it as an article of food. The primary, if not the only, object of the law is the preservation of the public health, and it seeks in one way to do this by prohibiting the sale of adulterated food or drugs for the use of man, but where either food or drugs are sold for other and different purposes and uses, the object of the law is not contravened.

Now, Dr. Chandler, in his article in *Johnson's Cyclopædia* on cream of tartar, gives some of the uses of the same, and among them the doctor says it may be used as a mordant for dyeing. If I understand the learned counsel for the people aright, he claims that if the complaint had charged that the defendant had sold this cream of tartar as an article of food, which it is, and the proof established that he sold it as and for a mordant for dyeing, that nevertheless he could be properly convicted under such a complaint for a violation of the law, for, says the learned counsel for the people, cream of tartar is an article of food, and in this case it was adulterated and sold by the defendant, and this would be sufficient to sustain a conviction under the law, irrespective of the fact that the complaint charged the sale as and for food for man, while the proof established that he sold it for an entirely different purpose—to wit, as and for a mordant for dyeing. In my judgment, the rules of criminal pleading would not sanction a conviction under such circumstances, but the variance between the allegation and the proof would be fatal to a conviction.

The third ground urged by the defendant's counsel why the judgment should be vacated and set aside requires a construction of the statute under which the defendant was convicted. So far as the letter of the statute is concerned, it is made a crime for one to sell adulterated food or drugs, irrespective of his intent; but it is claimed by defendant's counsel that a fair and just construction of the act not only requires proof of the sale of an adulterated article, but also that the sale was made with a criminal intent, or under circumstances of such negligence as in law supplies the place of the criminal intent; and in this claim, in my judgment, the counsel for the defendant is right. Bishop,

in his admirable work on Criminal Law, seventh edition, in section 287, says:

"The doctrine which requires an evil intent lies at the foundation of public justice. There is only one criterion by which the guilt of men is to be tested. It is whether the mind is criminal. And neither in philosophical speculation nor in religious or moral sentiment would any people, in any age, allow that a man should be deemed guilty unless his mind was so. It is, therefore, a principle of our legal system, as probably it is of every other, that the essence of an offense is the wrongful intent, without which it cannot exist." But he holds that under some circumstances the negligent manner with which an act is done may be so gross as to supply the place of the required criminal intent. And again, at sections 303 and 304, the same learned commentator on the criminal law says: "All statutes are to be, and constantly are interpreted with reference to the unwritten law, by the principles of which they are limited and extended, so as to preserve harmony in our judicial system, and promote justice."

"Since an evil intent is an indispensable element in every crime, any such mistake of fact as happening to one honestly endeavoring to discharge all legal and social duties, shows the act complained of to have proceeded from no love of evil in the mind, takes from it its indictable quality."

"A mistake of fact, neither induced nor accompanied by a fault or omission of duty, excuses the otherwise criminal act which it prompted."

In my judgment, the foregoing legal doctrine enunciated by Bishop in his book on Criminal Law, is unanswerable, and, construing and interpreting this statute in question by the law as laid down by Bishop, it follows that before a person can be convicted of a crime for its violation, it will be necessary to establish either that he was actuated by a criminal intent or was guilty of such negligence in the doing of the act as will supply the place of the criminal intent.

Does the evidence returned in the record in this case show such criminal intent or criminal negligence in the doing of the act charged as to constitute a crime and the defendant a criminal? There is no positive and direct evidence showing a

willful and intentional violation of the statute, nor does there seem to me to be any evidence going to show that the defendant was criminally negligent in selling the cream of tartar; on the contrary, on reading the evidence, I can come to no other conclusion but that the defendant was desirous of observing the law, and that in all that he did he acted the part of a careful and prudent man. He purchased the cream of tartar from a dealer, in open market. Before doing so, he inquired for the best article, and was told by the dealer that that purchased was the best. He paid the highest market price for the same, and believed that he was purchasing a pure article, and the best. He bought it for a pure article and sold it for the same, believing it to be pure.

I think the evidence comes very far short of making the defendant a criminal. At most, the evidence shows, in my opinion, that the sale of the cream of tartar, under all the circumstances, was an honest mistake of fact, without fault on the part of the defendant, which in law excused him.

For the foregoing reasons, I think the judgment of the Special Sessions was wrong, and should be vacated and set aside, and the defendant granted a new trial, and it is so ordered.

NOTE.—Although the doctrine of this case is supported by the great authority of Mr. Bishop (1 *Bishop Crim. Law*, 7 ed. §§ 301–304, 303 *a*, and note; *Bishop Statutory Crimes*, 2 ed. §§ 1124–1126), and by sound principle, the authorities holding that in such a case ignorance of fact does not excuse are very numerous.

A long list of them is given in 30 *American Rep.* 617, note. See also, to the same effect, Reg. *v.* Prince, 2 *L. R. C. C. R.* 154; 13 *Moak's English Rep.* 385; Redmond *v.* State, 36 *Ark.* 58; 38 *Amer. Rep.* 24, and the most recent case, Commonwealth *v.* Evans, 132 *Mass.* 11. The doctrine that ignorance does not excuse, is well established in Massachusetts. Commonwealth *v.* Farren, 9 *Allen*, 489; Commonwealth *v.* Nichols, 10 *Allen*, 199; Commonwealth *v.* Waite, 11 *Allen*, 264.

In an English case, Reg. *v.* Bishop, 5 *L. R. Q. B.* 259; 29 *Moak's English Rep.* 283, the defendant was convicted under 8 & 9 Vict. c. 100, § 44, of receiving lunatics into her house, not being a registered asylum or hospital, duly licensed under the above act, or any previous act. *Held*, that the belief of the defendant, on honest and reasonable grounds, that the persons so received were not lunatics, was no defense.

In reference to this case Sir James F. Stephen says: "I held, and the

court for crown cases reserved upheld my holding, that it was immaterial whether the defendant knew that her patients were lunatics or not, as the legislature intended persons keeping such establishments to receive patients at their peril. *This appeared from the general scope of the act, and from the nature of the evils to be avoided, and I am not aware of any other way in which it is possible to determine whether the word ' knowingly ' is or is not to be implied in the definition of a crime in which it is not expressed.*" 2 *History of the Criminal Law of England*, 117.

As supporting the doctrine of the principal case, see Farrell *v.* State, 32 *Ohio*, 456; 30 *Amer. Rep.* 614; Faulks *v.* People, 39 *Mich.* 200; 33 *Amer. Rep.* 374.